UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GASPAR ALONZO SILVESTRE (A 216-963-492),

Petitioner,

v.

BECERRA et. al.,

Respondents.

No. 1:26-CV-05919-DC-CKD

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a 22-year old citizen of Guatemala, entered the United States on March 17, 2021, when he was 16 years old. ECF No. 1-2 at 6. He was apprehended upon entry and placed in removal proceedings. ECF No. 5-1; 1-2 at 6. After designation as an Unaccompanied Alien Child (UAC) under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Petitioner was transferred to the custody of the U.S. Department of Health and Human Services Office of Refugee Resettlement (ORR) and then released to a relative on April 12, 2021. Id. at 2. Thereafter, Petitioner applied for asylum and Special Immigrant Juvenile Status (SIJS). ECF No.1-2 at 4, 10. U.S. Citizenship and Immigration Services (USCIS)

approved Petitioner's SIJS application and granted deferred action until April 14, 2027 while Petitioner awaits visa availability. Id. at 4. Petitioner's only criminal history appears to be a June 2026 arrest for violation of a domestic violence-related court order, for which there is no disposition in the record. ECF No. 5-2 at 1.

On July 15, 2026 – over five years after release – U.S. Immigration and Customs Enforcement (ICE) officers took Petitioner into custody when he appeared for a scheduled check-in. ECF No. 5-1 at 3. Petitioner is currently detained at Golden State Annex. ECF No. 1 at 2. Removal proceedings are pending but there is no future hearing date scheduled. Id. at 7.

Petitioner filed a petition for writ of habeas corpus on July 28, 2026 claiming that his current detention violates his Fifth Amendment right to due process and his Fourth Amendment protection against unlawful seizure. ECF No. 1. Respondents maintain that 8 U.S.C. § 1225(b)(2)(A) governs Petitioner's detention despite the Ninth Circuit's decision in Rodriguez Vazquez v. Bostock, No. 25-6842, 2026 WL 2196424 (9th Cir. 2026) but concede that Petitioner is "entitled to seek a custody redetermination hearing before an immigration judge." ECF No. 5. On August 6, 2026, ICE officials generated a Form I-286 Notice of Custody Determination indicating that Petitioner's detention is governed by 8 U.S.C. § 1226 (I.N.A. § 236; 8 C.F.R. § 236) and that Petitioner requests an immigration judge review of his detention. ECF No. 6-1. Petitioner countered that a post-deprivation hearing – which has yet to be scheduled – does not remedy the deprivation of liberty caused by re-detention after years of conditional release. ECF No. 7.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S.

537 (2007). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

**B. Statutory Immigration Framework**

"Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The relevant detention statutes at issue here are 8 U.S.C. §§ 1225(b)(2),1226(a), and 1232(c).

Under 8 U.S.C. § 1225, a noncitizen who arrives in the United States or is present in the U.S. but has not been admitted is treated as an applicant for admission. Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). Noncitizens determined to be inadmissible under certain specific grounds are covered by § 1225(b)(1) and subject to expedited removal unless they demonstrate a credible fear of persecution, after which they are detained pending adjudication of their application for asylum. 8 U.S.C. § 1225(b)(1). All other applicants for admission not covered by § 1225(b)(1) fall under § 1225(b)(2). Those subject to § 1225(b)(2) "shall be detained" while placed in removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

Noncitizens who are already present in the U.S. but are subject to removal proceedings may be detained pursuant to 8 U.S.C. § 1226(a). Unlike those detained under § 1225(b)(2),

where detention is mandatory, those detained under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2).

The detention of "unaccompanied alien children" (UAC) – minors under 18 years old who have no lawful immigration status in the United States and no parent or legal guardian in the United States available to provide care and custody (6 U.S.C. § 279) – is governed by the Trafficking Victims Protection Reauthorization Act (TVPRA), codified in 8 U.S.C. § 1232. UACs are placed in the custody of the Secretary of Health and Human Services in the "least restrictive setting that is in the best interest of the child" in consideration of any "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). A UAC is only placed in a "secure facility" if there is a determination that "the child poses a danger to self or others or has been charged with having committed a criminal offense." Id. If a UAC remains detained after reaching 18 years of age, the Department of Homeland Security must still consider placement in the least restrictive setting after considering the noncitizen's danger and risk of flight. 8 U.S.C. § 1232(c)(2)(B).

## III. Analysis

### A. Applicable Detention Statute

When Petitioner entered the United States as an unaccompanied minor, 8 U.S.C. § 1232 governed his detention and release. Respondents' position that Petitioner is now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) is contrary to recent Ninth Circuit precedent. Noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez v. Bostock, No. 25-6842 (9th Cir. July 30, 2026). Because ICE detained Petitioner after he had been present in the U.S. for over five years, § 1226 governs his current detention.

### B. Due Process

Petitioner alleges that revocation of his conditional liberty without prior notice or hearing violated his procedural due process right and cannot be remedied by a post-deprivation hearing. ECF No. 7.

In reviewing Petitioner's due process challenge, the Court turns first to the question of

whether Petitioner has a protected liberty interest in freedom from detention. Numerous courts, including those in this district, have found that individuals paroled and/or released from ICE custody have a protected interest in remaining out of custody. See Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026). See also R.D.T.M v. Wofford, No. 1:25-cv-01141-KES-SKO (HC), 2025 WL 2686866, at *4-5 (E.D. Cal. Sept. 18, 2025); P.A.H.E. v. Noem, No. 1:26-cv-01164-DJC-JDP, 2026 WL 451662, at *2 (E.D. Cal. Feb. 17, 2026) (citing Lopez v. Lyons, No. 2:25-cv-03174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Petitioner was released from custody on April 12, 2021. For over five years, Petitioner remained "at liberty relying on that determination." F.S.S.M. v. Wofford, No. 1:25-cv-01518-TLN-AC, WL 3526671, at *5 (E.D. Cal. Dec. 9, 2025). Accordingly, the undersigned finds that Petitioner has a protected liberty interest and may invoke the Due Process Clause to seek relief in his individualized circumstances.

Having so found, the undersigned applies the framework articulated in Mathews v. Eldridge, 424 U.S. 319 (1976) to determine whether Petitioner's re-detention violated his due process rights. See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved, including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

**1. Private Interest**

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in maintaining his out-of-custody status. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner remained out

of custody for five years. During that time, he applied for asylum and SIJS, necessary preliminary steps in obtaining lawful permanent residence in the U.S. ECF No. 1 at 4, 10. He also maintained steady, lawful employment and fathered a child. Id. at 8, 9. He complied with all terms of his supervised release. Id. His compliance, development of community ties, and pursuit of lawful permanent status support his private liberty interest. See Salazar v. Casey, No. 25-CV-2784, 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

**2. Risk of Erroneous Deprivation**

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor favors Petitioner, as his re-detention required a pre-deprivation hearing in which the burden of proof lies with the government.

"Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106 (E.D. Cal. 2025) (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner was previously released and placed with a sponsoring family member pursuant to the TVPRA (ECF No. 1-2 at 2), meaning the Office of Refugee Resettlement necessarily already determined that Petitioner does not pose a risk of flight or danger to the community based on an individualized assessment of his circumstances. See 8 U.S.C. § 1232(c)(2) (directing the relevant authorities to consider "danger to self, danger to the community, and risk of flight" in determining the placement of UACs). Courts in this circuit have found that the risk of erroneous deprivation is high when the noncitizen has not received a bond or custody hearing to determine whether there is any valid basis for detention after a prior release. Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, No. 1:25-cv-00801, 2025 WL

1918679, at *7 (E.D. Cal. July 11, 2025)). See also F.S.S.M. v. Wofford, 2025 WL 3526671, at *6 (finding risk of erroneous deprivation considerable where "as here, Petitioner was previously released pursuant to a finding that he was neither dangerous nor a flight risk" under the TVPRA). Respondents did not allege any changed circumstances that would justify re-detention.[1] Even if changed circumstances existed, a neutral adjudicator should determine whether such changed circumstances would now render Petitioner a danger or risk of flight. See Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) ("[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial.")(abrogated on other grounds.)

Respondents imply that any infringement on Petitioner's liberty interests can be adequately addressed in a bond hearing, which Petitioner has ostensibly requested. ECF No. 6. However, a post-deprivation hearing would place the burden on *Petitioner* to demonstrate that he does not pose a danger or flight risk. See Matter of R-A-V-P-, 27 I&N Dec. 803, 804 (BIA 2020) (citing Matter of Fatahi, 26 I&N Dec. 791, 795 n.3 (BIA 2016); Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006)). Moreover, despite Respondents' assertion that a hearing is "currently pending scheduling," they have not provided any timeline for when it might take place. ECF No. 6. Petitioner has already been detained for nearly two months without justification, and with neither a bond hearing nor removal hearing scheduled. Relying on an as-yet-unscheduled post-deprivation hearing where the Petitioner must justify release would risk further erroneous deprivation.

**3. Government's Interest**

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO

[1] Respondents submitted a RAP sheet showing a June 2026 arrest for violation of a civil restraining order which has not resulted in formal charges. ECF No. 5-2. Though ICE officers alluded to this arrest when Petitioner asked why he was being re-detained (ECF No. 1 at 10), Respondents have not represented to this Court that they re-detained Petitioner due to that arrest or any other alleged changed circumstances. Their stated position is that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). ECF No. 5.

(HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). Here, though, Respondents do not argue Petitioner is a flight risk or danger to the community. They have not articulated any legitimate interest that would support arresting Petitioner without a pre-deprivation hearing. The effort and cost required to provide Petitioner with procedural safeguards before re-detention would have been minimal. See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Indeed, "it is likely that the cost to the government of detaining [Petitioner] pending any bond hearing would significantly exceed the cost of providing [him] with a pre-detention hearing. Pinchi v. Noem, 792 F. Supp. 3d at 1036.

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in detention without first demonstrating that the detention was necessary to protect the community or ensure Petitioner's appearance. The undersigned therefore joins several district courts in concluding that a pre-deprivation hearing was required to satisfy due process. See Guillermo M.R. v. Kaiser, No. 25-cv-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025); Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Pinchi v. Noem, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019); Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The absence of such pre-deprivation hearing violates Petitioner's due process rights and warrants immediate release.

## IV. Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED.
2. Respondents be ORDERED to immediately RELEASE Petitioner from custody.
    a. At the time of release, Respondents shall be required to return all of

Petitioner's documents and possessions.

b. Respondents shall not impose any additional restrictions on Petitioner unless such restrictions are deemed necessary at a future pre-deprivation hearing.

3. Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections which include, at a minimum:

a. Pre-deprivation notice describing the change of circumstance(s) necessitating re-detention; and

b. A timely pre-deprivation hearing at which the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight even after consideration of alternatives to detention, and at which Petitioner shall be permitted to have his counsel present.

4. The order not address the circumstances under which which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

5. The Clerk of the Court be directed to serve Golden State Annex with a copy of any release order.

6. The Clerk of the Court be directed to enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal

the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 13, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 alon5919.imm.fnr